UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODY KANTER-DOUD,<br><br>   Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, N.A.,<br><br>   Defendant. | No. 2:23-cv-00678-DAD-AC<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. Nos. 3, 4, 12, 14, 16) |

This matter is before the court on the motion to dismiss filed by defendant Wells Fargo, N.A., on May 8, 2023. (Doc. No. 3.) On June 2, 2023, defendant's motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 18.) For the reasons explained below, the court will grant defendant's motion to dismiss.

**BACKGROUND**

On January 10, 2023, plaintiff Jody Kanter-Doud filed the complaint initiating this lawsuit against defendant Wells Fargo Bank, N.A. and unnamed Doe defendants 1–25, alleging financial elder abuse. (Doc. No. 1-1 at 20.) Rather than serve the original complaint on defendant, plaintiff instead filed the operative first amended complaint ("FAC") on February 16, 2023. (Doc. No. 1-1 at 2.) In her FAC, plaintiff alleges the following.[1]

---

[1] The paragraph references herein refer to the paragraphs of the FAC (Doc. No. 1-1 at 2–19), not the original complaint (Doc. No. 1-1 at 20–38).

1         Plaintiff was a longstanding customer of Wells Fargo Bank. (Doc. No. 1-1 at ¶ 42.) In
2  October 2014, plaintiff's physical health was declining. (*Id*. at ¶ 21.) She had previously
3  suffered a heart attack and her husband had also suffered multiple strokes, which left him
4  disabled. (*Id*.) Around that time, she was advised by a Wells Fargo financial advisor to open a
5  priority credit line, which could help pay potential medical bills that plaintiff might otherwise be
6  unable to pay. (*Id*.) Plaintiff agreed to let the advisor open the line of credit but did not
7  understand that her retirement savings and investments would serve as collateral if she ever used
8  the credit line. (*Id*. at ¶ 22.) The credit line then remained untouched for seven years. (*Id*. at
9  ¶ 23.) By 2021, plaintiff was over the age of 65 and had been living in Sacramento for nearly
10 twenty years. (*Id*. at ¶¶ 19, 41.)
11        In February 2021, plaintiff received an email purporting to be from Microsoft, stating that
12 she had an unpaid balance due of $399.00. (*Id*. at ¶ 24.) Plaintiff phoned the helpline provided in
13 the email and explained that there must have been a mistake because she had not used any
14 Microsoft services. (*Id*.) Plaintiff was told that charges on her bank account needed to be
15 reversed, and the supposed Microsoft supervisor on the phone provided specific instructions to
16 reverse the charge. (*Id*. at ¶ 25.) Several calls later, the same "supervisor" told plaintiff that
17 Microsoft had inadvertently refunded her Wells Fargo Bank account $39,000.00. (*Id*.) The
18 $39,000.00 appeared in plaintiff's Wells Fargo checking account. (*Id*. at ¶ 26.) Plaintiff did not
19 know that the money had come from her own Wells Fargo priority credit line. (*Id*.) To rectify
20 this phony overpayment, plaintiff was instructed to go into her local Wells Fargo Bank and send
21 out a wire transfer. (*Id*. at ¶ 27.) By this time, $49,500.00 had been transferred to plaintiff's
22 checking account from her priority credit line. (*Id*.)
23        On February 24, 2021, plaintiff entered the Wells Fargo branch located on Arena
24 Boulevard in Sacramento, California, and with the help of a Wells Fargo banker, she performed a
25 wire transfer in the amount of $49,500.00 to a Franyer Eduardo Barrios Meneses in San Miguel,
26 Peru. (*Id*. at ¶ 28.) The funds were pulled from plaintiff's priority credit line through her
27 checking account. (*Id*. at ¶ 28.) The banker asked plaintiff no questions about the reason or need
28 /////

for the transfer. (*Id*. at ¶ 29.) Nonetheless, the banker marked "Yes" on the wire transfer form confirming that a risk evaluation had been performed. (*Id.*)

The following day, plaintiff was again contacted by the supposed Microsoft representative, who told her the wired money was never received. (*Id*. at ¶ 30.) Plaintiff again saw that $49,500.00 was in her checking account that should not have been there. (*Id.*) Plaintiff was not aware that unauthorized users posing as Microsoft representatives had again transferred money from her Wells Fargo priority credit line into her bank account. (*Id.* at ¶¶ 30, 32.) Plaintiff returned to the Arena Boulevard Wells Fargo branch to inquire about the status of the wire transfer that she had just executed but was informed by Wells Fargo employees that no confirmation could be provided as to whether the wire transfer was received or not. (*Id*. at ¶ 31.)

The next day, on February 26, 2021,[2] at the same Arena Boulevard branch but this time with a different banker, plaintiff initiated a second wire transfer in the amount of $49,500.00 to a Roxana Estefania Torres in San Miguel, Peru. (*Id*. at ¶ 33.) This banker likewise asked no questions and nonetheless marked "Yes" on the wire transfer form confirming that a risk evaluation had been performed. (*Id*. at ¶ 34.)

On March 1, 2021, plaintiff was contacted yet again by the supposed Microsoft representative, who claimed that the money wired by plaintiff had still not been received. (*Id*. at ¶ 35.) Again, plaintiff saw that $49,500.00 was in her checking account. (*Id.*) This time, plaintiff went to the Wells Fargo branch located on Del Paso Boulevard in Sacramento, and with the help of banker Stephen Gillmore, performed a third wire transfer in the amount of $49,500.00 to an Oreidi Germania Machado Apure in Lima, Peru. (*Id*. at ¶ 36.) Just as was the case with the first two transfers, Mr. Gillmore did not ask plaintiff any questions and did not inform her that she had now used $148,500 of her $200,000 priority credit line. (*Id*. at ¶¶ 22, 37.) He too marked "Yes" on the wire transfer form confirming that a risk evaluation had been performed. (*Id*.)

On March 3, 2021, plaintiff was again contacted by the supposed Microsoft representative who again claimed that the wired money had still not been received. (*Id*. at ¶ 38.) Plaintiff again

---

[2] In the FAC, plaintiff alleges this date to be "February 26, 2022," instead of 2021, which appears to be a typographical error. (Doc. No. 1-1 at ¶ 33.)

1 went to the Del Paso Boulevard branch and met with the same banker, Mr. Gillmore.  (*Id.*)
2 However, this time, Mr. Gillmore actually completed a risk evaluation, determined plaintiff was
3 likely the victim of a fraudulent scheme, and did not complete the wire transfer.  (*Id.*)

4       Based on these allegations, in her FAC plaintiff brings the following two claims against
5 defendant:  (1) violation of California's Elder Abuse and Dependent Adult Civil Protection Act
6 (the "Elder Abuse Act"), California Welfare & Institutions Code §§ 15600, *et seq.*; and
7 (2) violation of California's Unfair Competition Law ("UCL"), California Business and
8 Professions Code § 17200, *et seq*.  (Doc. No. 1-1 at 2.)

9       On May 8, 2023, defendant filed the pending motion to dismiss plaintiff's complaint in its
10 entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 3.)  On May 22, 2023,
11 plaintiff filed an opposition to the motion, and on June 1, 2023, defendant filed its reply thereto.
12 (Doc. Nos. 11, 15.)  In connection with their respective briefs, the parties have also filed several
13 requests for judicial notice.  (Doc. Nos. 4, 12, 14, 16.)  Lastly, on August 1, 2023, defendant filed
14 a notice of supplemental authority to alert the court of the Ninth Circuit's unpublished decision in
15 *Bortz v. JP Morgan Chase Bank, N.A.,* No. 22-55582, 2023 WL 4700640 (9th Cir. July 24, 2023).

16 **LEGAL STANDARD**

17       The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal
18 sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.
19 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of
20 sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901
21 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to
22 relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A
23 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
24 the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*
25 *Iqbal*, 556 U.S. 662, 678 (2009).

26       In determining whether a complaint states a claim on which relief may be granted, the
27 court accepts as true the allegations in the complaint and construes the allegations in the light
28 most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider materials outside the pleadings if those documents are attached to the complaint, incorporated by reference in the complaint, or are matters of which judicial notice is taken. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* Documents that constitute "matters of public record" may be judicially noticed. *Intri-Plex Techsn., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). For this reason, courts

should not take judicial notice of a fact contained within a document if that fact "is subject to varying interpretations, and there is reasonable dispute as to what [the document] establishes." *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011).

## ANALYSIS

Before turning to defendant's motion, the court first considers the parties' respective requests for judicial notice. (Doc. Nos. 4, 12, 14, 16.)

**A.     Request for Judicial Notice**

In connection with its motion to dismiss, defendant requests that judicial notice be taken of copies of the four wire transfer requests referenced in plaintiff's FAC, a copy of the portion of Wells Fargo's online fraud notification to its customers referenced in the FAC, and a copy of Wells Fargo's Online Access Agreement operative in February and March 2021. (Doc. No. 4.) The court will grant plaintiff's request and take judicial notice of each of these documents because: (1) they are referred to in plaintiff's FAC, (2) they are central to plaintiff's claim of elder abuse, and (3) neither party has questioned the authenticity of the copies submitted. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (in ruling on a motion to dismiss, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

In connection with her opposition to the pending motion, plaintiff requests that judicial notice be taken of three public records: (1) a February 1, 2023 Press Release by the office of Senator Bill Dodd; (2) a Proposed California Senate Bill 278; and (3) a May 17, 2023 Senate Rules Committee, Office of Senate Floor Analyses of Proposed California Senate Bill 278. (Doc. Nos. 12 at 2; 14 at 2.) Defendant objects to plaintiff's request for judicial notice of Senator Dodd's press release "to the extent Plaintiff seeks to establish the truth of the matters asserted therein." (Doc. No. 15 at 8.) These documents are matters of public record and are made available on the websites of a governmental entity. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As to the proposed bill and bill analysis, the accuracy of the source of those records—the California Legislative Information website—cannot reasonably be questioned. Fed. R. Evid.

201(b). Accordingly, plaintiffs' request for judicial notice as to those documents will be granted. However, as to the press release, the court will take judicial notice of the fact that Senator Dodd's office issued a press release describing his introduction of Senate Bill 278 but not of the facts asserted therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that judicial notice is appropriate for "*undisputed* matters of public record" but not for "*disputed* facts stated in public records").

Finally, in connection with its reply brief, defendant requests that judicial notice be taken of the following documents: (1) California Senate Bill 1140 (2008); (2) California Assembly Bill 140 (2013); and (3) a copy of an unpublished order issued by the district court in *Breslow v. U.S. Bancorp*, No. 3:15-cv-02356-MJL-BGS (S.D. Cal. Apr. 22, 2016). (Doc. No. 16.) The court takes judicial notice of the two bills because they are official public records of the California State Legislature whose accuracy cannot reasonably be questioned. *See Chaker v. Crogan,* 428 F.3d 1215, 1223 n.8 (9th Cir.2005) (legislative history is an appropriate subject of judicial notice). The court declines to take judicial notice of the order appearing on the docket in *Breslow v. U.S. Bancorp*. *See Phillips v. Nat'l City Bank of Ind. First Franklin Div.*, 462 F. App'x 666, *1 n.1 (9th Cir. 2011) ("Judicial notice is not required for the court to consider the cited opinions as matters of law and potentially persuasive precedents.").[3]

**B.      Motion to Dismiss Pursuant to Rule 12(b)(6)**

In its pending motion, defendant moves to dismiss both of plaintiff's causes of action for failure to state a cognizable claim under Rule 12(b)(6). (Doc. No. 3-1 at 13–21.)

      1.      <u>Plaintiff's First Cause of Action of Financial Abuse</u>

California's Elder Abuse Act prohibits financial elder abuse, which can occur directly, or indirectly through assistance. Cal. Welf. & Inst. Code § 15610.30.

            a.      *Direct Financial Abuse*

Direct financial abuse of an elder occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for

---

[3] Defendant has provided the court with a copy of the unpublished order in *Breslow v. U.S. Bancorp* as required by Local Rule 133(i)(3).

7

1   wrongful use or with intent to defraud." *Id.* § 15610.30(a)(1).  California's Elder Abuse Act
2   defines the "taking" element of a cause of action brought under the Act, clarifying that "a person
3   or entity takes, secretes, appropriates, or retains real or personal property when an elder or
4   dependent adult is deprived of any property right." *Id.* § 15610.30(c).  Moreover, the Act
5   provides that the "wrongful use" element of such a cause of action requires that "the person or
6   entity knew or should have known that this conduct is likely to be harmful to the elder." *Id.* §
7   15610.30(b).

8       Here, defendant argues that plaintiff has failed to state a cognizable claim for direct
9   financial elder abuse both because its act of transferring plaintiff's funds was not a 'taking' and
10  because its conduct was not wrongful or fraudulent.  (Doc. Nos. 3-1 at 17–19; 15 at 14.)  Plaintiff
11  responds that defendant's alleged conduct did constitute a 'taking' and that her complaint
12  sufficiently alleges a 'wrongful use' because defendant should have known that their conduct
13  would be harmful to plaintiff.  (Doc. No. 11 at 15, 23.)

14      Addressing the wrongful use requirement first, the court finds that plaintiff's allegations
15  describing the highly suspicious nature of plaintiff's wire transfers and defendant's own adoption
16  of policies to protect against these exact kinds of devastating financial scams provide a sufficient
17  basis upon which to assert that defendant's bankers should have known that their actions (or lack
18  of action) would be harmful.  Indeed, in positing that plaintiff has failed to adequately allege facts
19  satisfying the "wrongful use" element, defendant does not argue that its bankers should not have
20  known that their actions would be harmful to plaintiff.  (Doc. No. 3-1 at 17.)

21      The court next turns to the taking element of plaintiff's cause of action for direct financial
22  abuse of an elder.  As to this element, defendant argues that plaintiff has failed to allege facts that,
23  if proven, would show that defendant took, secreted, appropriated, obtained, or retained plaintiff's
24  property.  (*Id.*)  The court agrees.  In her FAC, plaintiff alleges that defendant took, appropriated,
25  obtained, and/or retained plaintiff's property with and for a wrongful use when its agents
26  repeatedly transferred funds out of plaintiff's credit line.  (*See* Doc. No. 1-1 at ¶ 75.)  However,
27  plaintiff has not alleged any facts that would show that defendant deprived her of a property right
28  by authorizing the wire transfers.  In cases involving similar very unfortunate circumstances as

8

those alleged here both the Ninth Circuit and district courts have concluded that no cognizable claim for direct financial abuse can be stated against the bank. *See Bortz v. JP Morgan Chase Bank, N.A.,* No. 22-55582, 2023 WL 4700640, at *1 (9th Cir. July 24, 2023) (finding that the "[p]laintiff's complaint alleges that the scammers took their life savings, not [the defendant]")[4]; *Miller v. Bank of Am., N.A.*, No. 1:21-cv-00337-JLT, 2022 WL 3704093, at *5 (E.D. Cal. Aug. 26, 2022) (holding that where "an account owner initiated the transfers, third party scammers obtained the funds, and the defendant bank merely processed the transactions, there is no claim for a 'direct taking'"); *see also Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1159–60 (N.D. Cal. 2021) (finding that the plaintiffs adequately alleged that the defendant obtained the plaintiff's money over the course of various third-party scams, where the plaintiff alleged that the defendant controlled the funds for approximately 45 days and took a commission in connection with its actions). In light of this authority, the court concludes that plaintiff has failed to state a cognizable claim for direct financial elder abuse.

Therefore, the court will grant defendant's motion to dismiss plaintiff's financial elder abuse claim to the extent that claim is based on a direct abuse theory. Plaintiff will be granted leave to amend this claim because it is not clear to the court that allowing further amendment would be futile. *See Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960) (noting that the Ninth Circuit has a policy of "extreme liberality generally in favoring amendments to pleadings."); Fed. R. Civ. P. 15(a) (providing that leave to amend should be granted "freely" when justice so requires).

      b.  *Indirect Financial Abuse*

Indirect financial abuse of an elder occurs when a person or entity "[a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud." Cal. Welf. & Inst. Code § 15610.30(a)(2). The definitions for a "taking" and a "wrongful use" under the statute are the same as described above with regard to the prohibition against direct financial abuse. In addition, although not

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

9

explicitly stated in the Elder Abuse Act, courts have consistently recognized a knowledge requirement with respect to indirect abuse claims brought against banks, whereby the plaintiff must plead that the defendant had "actual knowledge of the third-party scammer's wrongful conduct" in order to "show that a defendant bank 'assisted' an impermissible direct taking." *Miller*, 2022 WL 3704093, at *5 (citing *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 745 (2010)). In *Das*, the California Court of Appeal established the knowledge requirement and held that where "a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have 'assisted' the financial abuse only if it knew of the third party's wrongful conduct." *Das*, 186 Cal. App. 4th at 745. The holding in *Das* stemmed from the long line of decisions by California courts finding that liability for aiding an intentional tort depends on proof of actual knowledge of the specific wrong being assisted. *Id.* at 744–45 (citing *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145–46 (2005) (explaining that "[k]nowledge is the crucial element," and "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted")). While the state appellate court in *Das* interpreted a prior version of California's Elder Abuse Act, the Ninth Circuit has found that subsequent amendments made by the California legislature to that act "did not materially alter subdivision (a)(2)." *Bortz*, 2023 WL 4700640 at *1; *see also Das*, 186 Cal. App. 4th at 736.

In moving to dismiss this cause of action defendant argues that plaintiff has failed to allege facts suggesting that it had actual knowledge of the scam being perpetrated on plaintiff. (Doc. No. 3-1 at 14–17.) In response, plaintiff argues that she has plead sufficient facts demonstrating defendant's actual knowledge, but, in the alternative, argues that there is no actual knowledge requirement, and at most that a constructive knowledge or reasonable person standard should apply. (Doc. No. 11 at 16–22.)

Because plaintiff's FAC does not adequately plead facts supporting the allegation that defendant had actual knowledge of the wrongful conduct of the third parties involved in the scam, the court concludes that the FAC also does not state a cognizable claim for indirect financial abuse. The court understands that a reasonable inference to be drawn from the allegations of the

1  FAC is that the wire transfer requests were likely highly unusual banking transactions for plaintiff
2  to engage in, and that the bank employees whom plaintiff interacted with should have known that
3  something suspicious was occurring.  Nonetheless, plaintiff has not alleged that she told
4  defendant's agents about the conduct of the third party scam artists before the wire transfers were
5  processed, nor does plaintiff allege that defendant otherwise had actual knowledge that she was
6  being scammed at the time the wire transfers were processed.  On the contrary, the FAC alleges
7  that plaintiff and defendant engaged in no discussion about why she was conducting the wire
8  transfers.  (Doc. No. 1-1 at 7).  Thus, plaintiff's FAC is devoid of any alleged facts which, if
9  proven, would demonstrate that defendant had actual knowledge of the scammer's wrongful
10  conduct, a required element for an indirect financial elder abuse claim.  *See Gray v. JPMorgan*
11  *Chase Bank, N.A.*, 661 F. Supp. 3d 991, 998 (C.D. Cal. 2023*)* (granting the defendant's motion to
12  dismiss the plaintiff's financial elder abuse claim due to the lack of allegations of actual
13  knowledge, noting "there were no discussions between [the defendant] and [the plaintiff]
14  regarding the purpose of the transfers").

15  Obviously, the facts alleged here would cause anyone to have a great deal of sympathy for
16  plaintiff and her plight.  However, plaintiff's argument that the actual knowledge standard
17  employed by the California Court of Appeal in *Das* no longer applies to claims of assisting
18  financial elder abuse, is simply not persuasive as a matter of law. (Doc. No. 11 at 19.)  Plaintiff's
19  reliance on state appellate decisions in support of her argument that the actual knowledge
20  standard has been discarded is misplaced.  This is because plaintiff's argument is based upon
21  language used by those courts in discussing direct financial elder abuse claims, not indirect
22  assistance claims, which does not indicate that the requirements for an indirect claim have
23  changed. (Doc. No. 11 at 19–20) (quoting *Bonfigli v. Strachan*, 192 Cal. App. 4th 1302 (2011)
24  and *Strebley v. Litton Loan Servicing*, LLP, 202 Cal. App. 4th 522, 527 (2011)).  Plaintiff also
25  relies on two unpublished decisions by judges of the San Francisco Superior Court in which
26  demurs brought by the defendant banks on the ground that actual knowledge was a prerequisite
27  for liability on a claim of assisting elder financial abuse were denied.  (Doc. No. 11 at 20–21)
28  (citing *Smith v. Bank of Am.*, No. CGC-16-552080 (San Francisco Super. Ct., Oct. 4, 2016) and

*Donfray v. Wells Fargo Bank, N.A.*, No. CGC-20-15 583893 (San Francisco Super. Ct. July 1, 2020)). But those state trial court rulings, which can be cited only as persuasive authority, do not provide a basis upon which this court should reject the California Court of Appeal's decision in *Das*.

Finally, the court has reviewed plaintiff's submission of materials regarding California State Senator Dodd's proposed amendment to the Elder Abuse Act, and considered plaintiff's argument that the purpose of that proposed amendment is to clarify that the Act does intend to hold financial institutions responsible when they negligently assist in the transfer of funds to fraudsters. (Doc. Nos. 11 at 13; 12 at 5–11.) But, unless and until that proposed amendment has been passed by the California legislature and becomes effective, or there is "convincing evidence" that the California Supreme Court would adopt an alternative statutory construction of the Act as currently written, this court is "obligated to follow" *Das* and cannot depart from imposing the knowledge requirement it creates. *Bortz*, 2023 WL 4700640, at *2 (citing *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) ("However, in the absence of convincing evidence that the highest court of the state would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts.") (citations and internal quotes omitted)).

Accordingly, the court will also grant defendant's motion to dismiss plaintiff's indirect financial elder abuse claim, with leave to amend.

2. <u>Plaintiff's Second Cause of Action under the UCL</u>

California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL is a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.,* 20 Cal. 4th 163, 181 (1999)). "By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech,* 20 Cal. 4th at 180 (citation and internal quotation marks omitted). Here, plaintiff alleges that defendant's conduct violated all three prongs of the UCL. (Doc. No. 1-1 ¶¶ 86–92.) In moving to

12

dismiss this cause of action, defendant argues that plaintiff has not adequately alleged her UCL claim under any prong. (Doc. No. 3-1 at 19–21.)

   a. *Unlawful Prong*

"Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). Defendant contends that plaintiff has not sufficiently pled a violation of a predicate statute or law as required by the UCL. (Doc. No. 3-1 at 20.) In her opposition, plaintiff argues that she has adequately alleged that defendant violated California Welfare and Institutions Code § 15610.30 by perpetuating and assisting in financial abuse of an elder and § 15630.1 for failing to report suspected financial abuse of an elder. (Doc. No. 11 at 23.)

As explained above, the court has concluded that plaintiff has failed to adequately allege a violation of the Elder Abuse Act. Moreover, to the extent plaintiff pursues her UCL claim based on an alleged failure by defendant to report suspected abuse, this too fails since the reporting statute only subjects a bank to penalties in a civil action brought by the attorney general. *Das*, 186 Cal. App. 4th at 736; *Millare v. Bank of Am., N.A.*, No. 21-cv-8398-PA-KES, 2022 WL 1843133 at *6 (C.D. Cal. Jan. 25, 2022) (finding that the court's holding in *Das* means that a "violation of the reporting statute cannot support a UCL claim"). It follows that plaintiff then has not sufficiently stated a UCL claim under the 'unlawful' prong. *See Dawson v. HITCO Carbon Composites, Inc.*, No. 16-cv-7337-PSG-FFM, 2017 WL 7806618 (C.D. Cal. Jan. 20, 2017) ("Where a plaintiff cannot state a claim under the 'borrowed' law, he cannot state a UCL claim either.").

For these reasons, the court will dismiss plaintiff's UCL claim brought under the 'unlawful' prong, with leave to amend.

   b. *Fraudulent Prong*

To plead a UCL claim predicated on a defendant's allegedly fraudulent business practices, a plaintiff must "state with particularity the circumstances constituting fraud" in support of the claim. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)); *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987) ("[A] pleading satisfies the

13

particularity requirement [of Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."). "To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Scott v. Bluegreen Vacations Corp.*, No. 1:18-cv-649-AWI-EPG, 2018 WL 6111664, at *5 (E.D. Cal. Nov. 21, 2018) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).

In its motion to dismiss, defendant argues that plaintiff fails to state a cognizable UCL claim under the fraudulent business practices prong because she has not alleged any specific deceptive or misleading acts by defendant. (Doc. No. 3-1 at 20.) In her opposition to the motion, plaintiff does not respond to this argument. The court notes, however, that plaintiff does allege potentially deceptive and misleading acts by defendant's agents in her FAC. (Doc. No. 1-1 at 18.) For example, plaintiff describes how for each of the completed wire transfers to Peru, a Wells Fargo banker marked "yes" on a wire transfer form confirming that a risk evaluation had been performed, despite the banker asking plaintiff no questions to evaluate her reason or need for conducting the wire transfer of her funds. (*Id*. at 7–9.) Plaintiff's complaint alleges facts to satisfy many of the "who, what, when, where, and how" elements, since she identifies the names of each banker that filled out the wire transfer forms, the dates of the interactions, and the locations of the Wells Fargo branches. (Doc. No. 1-1 at 7–9.) She also describes in the FAC what the misconduct is, specifically, the act of purporting to complete a risk evaluation when no risk evaluation is actually done, as no banker engaged her in discussion about the need for the wire transfers or her significant use of the credit line. (*Id*.) However, plaintiff's FAC does not specifically address what is false or misleading about this alleged conduct. As such, plaintiff's FAC does not sufficiently state a UCL claim based on fraudulent business practices. Moreover, plaintiff appears to have abandoned the 'fraudulent' prong basis for her UCL claim because she offered no response to defendant's argument as to that prong in her opposition to the pending motion. Nonetheless, out of an abundance of caution, the court will also dismiss plaintiff's UCL claim brought under the fraudulent prong, with leave to amend.

14

        c.     *Unfair Prong*

Unlike the fraudulent prong of a UCL claim which is subject to Rule 9 pleading requirements, a plaintiff alleging an unfair business practice need only state "with reasonable particularity" the facts supporting the claim. *Khoury v. Maly's of Cal, Inc.*, 14 Cal. App. 4th 612, 619 (1993). Whether conduct is unfair can be determined by application of a balancing test, whereby the court balances the impact of a business practice on its alleged victim against the "reasons, justifications, and motives of the alleged wrongdoer." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 886 (1999). In conducting this balancing courts look for whether the harm to the consumer is outweighed by the utility of the defendant's practice. *Lozano*, 504 F.3d at 735–36. Whether the identified practice is actually unfair is a "question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be [decided at the pleading stage]." *Linear Tech. Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 134–35 (2007).

Defendant argues that plaintiff's UCL claim based on alleged unfair conduct fails because simply processing plaintiff's wire transfers constituted routine banking activity by defendant. (Doc. No. 3-1 at 21.) Defendant's argument, however, does not acknowledge plaintiff's allegations that defendant's unfair conduct is not just the completion of wire transfers by defendant's agents, but also the failure of those agents to follow through on their own fraud monitoring procedures. (Doc. No. 1-1 at 18.) Plaintiff has identified a particular practice: defendant's agents check a box indicating that a risk evaluation was conducted before completing wire transfers, but during the wire transfer process, the agents engage in no questioning of, or conversation with, customers about the reason/need for the transfer or the source of the funds. (Doc. No. 1-1 at 7–9.) Under the balancing test, the court can fathom little utility to a practice of rubber-stamping these risk evaluations. *See MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1099 (N.D. Cal. 2014) (holding that the plaintiff had sufficiently alleged unfair conduct under the balancing test because the defendant's alleged omissions were "without utility" and thus did "not outweigh the harm [the plaintiffs] suffered"). However, plaintiff has not alleged any facts addressing the relative weight of the risk evaluation practice actually employed by defendant and

its utility as compared to the harm posed to the consumer by that practice. In short, the court concludes that plaintiff has not alleged an unfair business practice "with reasonable particularity" sufficient to withstand defendant's motion to dismiss. *See Khoury*, 14 Cal. App. 4th at 619.

It appears quite possible, perhaps even likely, that plaintiff can cure this pleading deficiency by way of amendment to allege the particular policy, its harm, and the weight of its harm as compared to its utility. Accordingly, the court will grant defendant's motion to dismiss plaintiff's UCL claim under the 'unfair' prong, also with leave to amend.

## CONCLUSION

For the reasons explained above:

1. Defendant's requests for judicial notice (Doc. Nos. 4, 16) are granted in part and denied in part, as explained in this order;

2. Plaintiff's requests for judicial notice (Doc. Nos. 12, 14) are granted in part and denied in part, as explained in this order;

3. Defendant's motion to dismiss (Doc. No. 3) is granted in its entirety, with plaintiff being granted leave to amend as to all of her causes of action;

4. Plaintiff shall file her second amended complaint, or alternatively, a notice of her intent to not file a second amended complaint, within twenty-one (21) days from the date of entry of this order; and

5. Plaintiff is warned that her failure to comply with this order may result in dismissal of this action due to plaintiffs' failure to prosecute.

IT IS SO ORDERED.

Dated:  **January 31, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE